*DAVID P. ADAMS v. WM. H. THOMAS and W. L. HILLIARD, his Guardian.

*Lunatic—Property liable for Debt—Practice.*

1. Subject to a reasonable maintenance of a lunatic and his minor children, the residue of his property is liable to pay his debts anterior to the lunacy.

2. On a judgment of this court against a lunatic, rendered prior to his lunacy, where no property can be seen which ought to be sold under execution from this court, the plaintiff will be granted leave to proceed on the judgment for its payment, by action in the superior court of the proper county.

(*Smith v. Pipkin*, 79 N. C., 569 ; *Blake v. Respass*, 77 N. C., 193, cited and approved.)

MOTION for leave to issue execution heard at June Term, 1880, of THE SUPREME COURT.

*Messrs. Merrimon, Fuller & Fuller*, for plaintiff.
*Messrs. T. D. Johnston* and *M. Erwin*, for defendant.

DILLARD, J. In this case a decree was heretofore entered in this court in an old equity cause in favor of the plaintiff for a large sum of money against the defendant, then of sane mind, but since and now a lunatic; and at the June term, 1879, of this court, on motion of the plaintiff for execution, after notice to W. L. Hilliard, the guardian of said Thomas, it was held that the plaintiff was entitled to be paid his debt and to have an execution therefor, but only out of any residue of his estate, real and personal, which might be left after the assignment of a sufficiency thereof to maintain the lunatic and his minor children ; and the

---

* SMITH, C. J. having been of counsel did not sit on the hearing of this case.

grant of execution was suspended until the guardian could have such adequate amount set apart and report to this court an inventory thereof, as well as of the residue of the estate. See the case in 81 N. C., 296. At this term of the court the guardian of the lunatic having had a part of the estate assigned and set apart by proceedings in the probate court of Jackson county, for the maintenance of the lunatic and his minor children, of whom there are but two, now well advanced towards majority, files a certified copy of the allotment, including a schedule of all the estate of the lunatic, and all expenses and debts incurred in his support, and his other debts contracted before the lunacy, and thereupon the plaintiff renews his motion for execution, which makes it necessary to see whether there be anything which may be sold under the execution prayed for.

From the certified copy of the proceedings in the probate court the following material facts appear, to-wit:

1. That there is a decree of the circuit court of the United States in favor of William Johnston for a balance of eight thousand dollars, to pay which there is a lien on all the lands of the lunatic.

2. That besides this lien, there are docketed state judgments aggregating about $16,000, also operating as a lien on the real estate of the lunatic.

3. Besides these judgments, many other claims against the lunatic exist.

4. The real estate of the lunatic consists of many tracts, situate in divers counties, about 40,000 acres in all, worth from fifty cents to two dollars per acre, if sold on time, and not worth more than one-fifth at forced sales, the most valuable tract being involved at this time in litigation and requiring great outlay for costs and necessary attention.

5. That the whole real estate, as it now is, does not yield annually enough to pay the taxes assessed thereon.

6. The notes and evidences of debt are uncollectible from lapse of time or the insolvency of the debtors.

7. The sum of $2,000 is approved as a proper sum for the maintenance of the lunatic and his minor children and for costs and fees of suits in and about the lands of the lunatic annually for the first two years; $1,900 annually for the next two years; and $1,600 for one year thereafter, and then the sum of $5,000 for the support of the lunatic from and after the first of January, 1886, if he be then living, and he fixes on $2,450 as due and to be paid for expenses of the lunatic's maintenance incurred up to the present time.

8. A commissioner is appointed to make collections and sell lands on credit as prescribed, and to pay the sums designated as set apart for the lunatic, with the duty to make reports and be under the control of the court.

From the report made to this court, as we understand it, the entire real estate of the lunatic (there being no tangible personal property) is under the prior lien of a United States judgment for a considerable sum, and also under the lien of docketed judgments of the state courts for $16,000; and if so, we are unable to see that there is anything which can be sold under an execution for plaintiff's debt, or if there be, certain it is, that a sale under existing circumstances by the sheriff, the property now being involved in litigation, would defeat all maintenance to the lunatic as provided out of the same, and make a sacrifice of all the interests of the creditors having liens and claims on the estate.

Of the legality of the proceedings in the probate court and of the mode of setting apart a maintenance for the lunatic, and the property wherein it is done, and the amount set apart and the allowance for past and future litigation, we are not at liberty to speak, because no case involving exceptions therefor is before us by appeal; but all we can say is, that subject to a reasonable maintenance of the lunatic and his minor children, the residue of his property is liable to pay his debts anterior to the lunacy and ought to be applied.

The debt of the plaintiff is a debt established by judgment before the lunacy of the defendant, and as there is no property which we can see ought to be sold under an execution issued from this court, we can only refuse the motion for execution and grant leave to plaintiff to proceed on the judgment of this court for its payment by action in the superior court of the proper county, as he may be advised.

As we cannot act for the relief of the plaintiff under existing circumstances, the plaintiff, his debt being contracted before the lunacy, must seek provision to be made for the payment of his debt in the superior court, in which court alone there is power to deal with the subject, under chapter 57 of Battle's Revisal, as settled by *Smith* v. *Pipkin*, 79 N. C., 569, and *Blake* v. *Respass*, 77 N. C., 193.

The motion of plaintiff for execution is refused but with leave to plaintiff to proceed on the judgment of this court, or take such steps for its collection in the court below as he may be advised.

PER CURIAM.　　　　　　　　　　　　　Motion refused.